Minute Order Form (06/97)

# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Robert W. Gettleman | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 01 C 6244 | **DATE** | Feb. 21, 2002 |
| **CASE TITLE** | Finova Capital Corop, v Gregory J. Slyman, et al | | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

order striking affirmative defenses

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]
(2) ☐ Brief in support of motion due _____.
(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.
(4) ☐ Ruling/Hearing on _____ set for _____ at _____.
(5) ■ Status hearing set for 3/6/02, at 9:00 a.m.
(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(7) ☐ Trial[set for/re-set for] on _____ at _____.
(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.
(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
    ☐ FRCP4(m)  ☐ General Rule 21  ☐ FRCP41(a)(1)  ☐ FRCP41(a)(2).
(10) ■ [Other docket entry]

Memorandum opinion and order entered. Accordingly, plaintiffs' motion to strike affirmative defenses is granted and all three affirmative defenses are stricken.

(11) ■ [For further detail see order attached to the original minute order.]

| | | | | Document Number |
|---|---|---|---|---|
| | No notices required, advised in open court. | | | |
| | No notices required. | | number of notices | |
| X | Notices mailed by judge's staff. | | FEB 2 5 2002 | |
| | Notified counsel by telephone. | | date docketed | |
| | Docketing to mail notices. | | | 17 |
| | Mail AO 450 form. | U.S. DISTRICT COURT CLERK | docketing deputy initials | |
| | Copy to judge/magistrate judge. | | | |
| GDS | courtroom deputy's initials | 02 FEB 25 AM 11:21 | date mailed notice | |
| | | Date/time received in central Clerk's Office | mailing deputy initials | |

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

FINOVA CAPITAL CORPORATION, a )
Delaware corporation, )
)
Plaintiff, )
) No. 01 C 6244
v. )
) Judge Robert W. Gettleman
GREGORY J. SLYMAN, PETER J. SLYMAN, )
and SLYMAN FAMILY INVESTMENT )
PARTNERSHIP, )
)
Defendants. )

## MEMORANDUM OPINION AND ORDER

Plaintiff, Finova Capital Corporation, has filed a three-count complaint, alleging breach of guaranty agreement against each of defendants Gregory J. Slyman, Peter J. Slyman, and the Slyman Family Investment Partnership ("Partnership"). In their answer to plaintiff's complaint, defendants assert three affirmative defenses: "Accord and Satisfaction/Waiver," "Estoppel" and "Breach of the Covenant of Good Faith and Fair Dealing." Plaintiff has filed a motion to strike those affirmative defenses. For the reasons explained below, plaintiff's motion is granted.

## FACTS

Plaintiff is the successor in interest by merger to Fremont Financial Corporation ("Freemont"), which loaned money to the Richard O. Schulz Company ("Borrower") and secured guarantees for that loan from defendants.[1] Defendants Gregory and Peter Slyman each signed a limited continuing guaranty agreement that unconditionally promised payment of up to $500,000

---

[1] Based on the documents filed by the parties, it appears that defendants Gregory and Peter Slyman are shareholders and members of the Board of Directors of Borrower.

in the event of Borrower's default. Similarly, the Partnership signed a continuing guaranty agreement that unconditionally promised to pay the full amount of the loan in the event of Borrower's default. According to plaintiff, Borrower defaulted on the loan and was notified of that default on December 5, 2000. Thereafter, on March 16, 2001, Borrower and plaintiff entered into a forbearance agreement (which amended some of the terms of the loan agreement) wherein plaintiff agreed to forbear temporarily from exercising its rights with respect to the default, provided that Borrower comply with the term s of the loan and forbearance agreements, under which defendants executed letter agreements reaffirming their obligations under the guaranty agreements.

On May 4, 2001, plaintiff notified Borrower that it had defaulted again under §8 of the loan agreement, and that plaintiff was exercising its right under §9.1(b) of that agreement to cease advancing money or extending credit to or for the benefit of Borrower. Plaintiff told Borrower that it would consider funding requests by Borrower pursuant to an acceptable wind-down budget to be provided by Borrower. As of July 31, 2001, Borrower still owed approximately $1,546,241.73, exclusive of interest, fees, costs and expenses thereafter accrued by plaintiff.

Plaintiff filed the instant suit against defendants on August 14, 2001.

## STANDARD OF REVIEW

While generally disfavored in this circuit, it is appropriate for courts to grant motions to strike affirmative defenses that add unnecessary clutter to a case. See Heller Fin., Inc. v. Midwhey Powder Co., 883 F.2d 1286, 1294 (7th Cir. 1989); Household Fin. Serv., Inc. v. Northeastern Mortgage Inv. Corp., 2000 U.S. Dist. LEXIS 8975, at *3, 2000 WL 816795, at *1

(N.D. Ill. June 22, 2000) (citing Heller, 883 F.2d at 1295). In deciding whether to strike affirmative defenses, the court employs this three-part test: "(1) the matter must be properly pleaded as an affirmative defense; (2) the matter must be adequately pleaded under the requirements of Federal Rules of Civil Procedure 8 and 9; and (3) the matter must withstand a Rule 12(b)(6) challenge -- in other words, if it is impossible for defendants to prove a set of facts in support of the affirmative defense that would defeat the complaint, the matter must be stricken as legally insufficient.." Renalds v. S.R.G. Restaurant Group, 119 F. Supp. 2d 800, 802 (N.D.Ill. 2000); Heller, 883 F.2d at 1294.

## DISCUSSION

Plaintiff's motion to strike defendants' affirmative defenses raises two main arguments. First, plaintiff argues that defendants waived any and all defenses they had when they signed the guaranty and letter agreements. Second, plaintiff argues that even if defendants did not waive their right to bring affirmative defenses, the individual affirmative defenses defendants allege do not withstand challenge under Federal Rule of Civil Procedure 12(b)(6).

### I. Plaintiff's Waiver Argument

Beginning with the guaranty agreements each defendant signed, plaintiff points out that those agreements state that they are "continuing, unlimited, absolute, and unconditional," and that they guarantee "full and prompt payment and performance by Borrower." The guaranty agreements also state that, "Guarantor waives all rights and defenses arising out of an election of remedies by [plaintiff]," that "Guarantor waives any defense arising by reason of any disability or other defense of Borrower," and further makes clear that "Guarantor agrees that nothing shall discharge or satisfy the liability of Guarantor hereunder except the full and indefeasible payment

3

and performance of all of Borrower's Indebtedness and obligations to [plaintiff] with interest." Similarly, the letter agreements executed by defendants state that defendants, "reaffirm[], acknowledge[] and consent[] to the continuation of [their] obligations under the Guaranty . . . [and] consent[] to the terms of the Forbearance Agreement," and further that they "confirm[] that there are no defenses relating to the enforcement of the Guaranty existing in [their] favor as of the date hereof," and that they "waive[] any defenses, setoffs and counterclaims relating to the enforcement of the Guaranty which may now or anytime hereafter be available to [them]."

Plaintiff argues that the terms of the guaranty and letter agreements, which are clear and unambiguous, constitute a waiver by defendants of any defenses they might have to plaintiff's enforcement of the agreements following Borrower's default. See Kolson v. Vembu, 869 F.Supp. 1315, 1320-21 (N.D. Ill. 1994). "Guaranty agreements containing waivers of all defenses . . . have been upheld as validly binding." Chemical Bank v. Paul, 614 N.E.2d 436, 441-42 (Ill. App. Ct. 1st Dist. 1993) (citing Lincoln Park Federal Sav. & Loan Asso. v. Carrane, 548 N.E.2d 636 (Ill. App. Ct. 1st Dist. 1989)). Still, as explained in Chemical Bank, public policy concerns must be taken into account by courts when determining the effect and extent of such waivers. See 614 N.E.2d at 442-43 (declining to find that the guarantor waived its right to assert an affirmative defense under the covenant of good faith and fair dealing despite clear and ambiguous waiver of all defenses in guaranty agreement). The court need not address the public policy concerns that arise with respect to each of defendants' affirmative defenses, however, because as explained below, those defenses do not withstand Rule 12(b)(6) scrutiny.

4

## II. Plaintiff's Merits Arguments

### A. Defendants' "Accord and Satisfaction/Waiver" Affirmative Defense

Defendants' first affirmative defense asserts that defendants are not responsible for the amounts owed under the guaranty or letter agreements because, "In late May or early June, 2001, Plaintiff offered to release Defendants from all guarantees if they agreed, as officers of [Borrower] to assign all of the assets of [Borrower] to a receiver of Plaintiff's choosing, i.e., High Ridge Partners." According to defendants, they "accepted [plaintiff's] offer and, in fact, executed an assignment for the benefit of creditors designating High Ridge Partners as its assignee," but then "Plaintiff purported to withdraw the offer after it was accepted." Even so, defendants allege, "the parties reached a valid accord and satisfaction prior to such withdrawal and, accordingly, Plaintiff has waived the claims which it asserts herein."

Plaintiff urges the court to strike this affirmative defense arguing that, even if defendants' allegations are true, the oral agreement to which defendants refer cannot be enforced because Illinois law precludes such defenses premised upon agreements that have not been committed to

writing.[2] To support this argument, plaintiff cites to the Illinois Credit Agreements Act, 815 ILCS 160/1 et seq. (the "ICAA"), and argues that it bars defendants from using any oral agreement as a defense in the instant case. According to plaintiff, because the guaranty agreements in the instant case fit within the definition of "credit agreements" in the ICAA, any assertion by defendants that the credit agreement was altered or that a new credit agreement was entered into can only be substantiated by a document that fits within the requirements of §§2 and 3 of the ICAA.

The court agrees with plaintiff that the guaranty agreements signed by defendants are "credit agreements" as defined by the ICAA. See ICAA §1 (defining "credit agreement" as "an agreement or commitment by a creditor to lend money or extend credit or delay or forbear

---

[2] Plaintiff also argues that the express terms of the guaranty agreement forbid defendants' reliance on an oral agreement. As plaintiff points out, §2 of the guaranty agreements, titled "Continuation of Terms" provides:

> This Continuing Guaranty shall not be affected or impaired by any modifications, supplements, extensions, or amendments of any contract or agreement to which the parties thereto may hereafter agree, nor by any modifications, releases or other alterations of any of the Indebtedness hereby guaranteed or of any security therefore, nor by any agreements or arrangements whatever with Borrower or anyone else.

Additionally, §10 of the guaranty agreements, titled "Amendments in Writing," requires modifications or amendments thereto to be in writing. Section 10 reads: "No termination or modification of this Continuing Guaranty shall be effective for any purpose unless it is in writing and executed by an officer of [plaintiff] authorized to do so."

Apparently conceding the point, defendants did not respond to this argument in their response brief to plaintiff's motion. Thus, the court concludes that the above language provides an alternative ground to granting plaintiff's motion to strike defendants' first affirmative defense.

repayment of money not primarily for personal, family or household purposes, and not in connection with the issuance of credit cards"). Indeed, at least one Illinois court has held that a guaranty agreement, when set forth as a "condition precedent" to a loan, is considered part of the "comprehensive credit agreement" between the parties and are therefore governed by the ICAA. Bank One, Springfield v. Roscetti, 723 N.E.2d 755, 763 (Ill. App. Ct. 4th Dist. 1999). Applying Roscetti, it is evident that the guaranty agreements in the instant case were a condition precedent to the loan plaintiff made to Borrower based on the fact that those agreements begin with this language:

> To induce [plaintiff] to grant credit to [Borrower], and in consideration thereof and of any loans, advances or other financial accommodations heretofore or hereafter granted by [plaintiff] to or for the account of Borrower, the undersigned . . . unconditional guarantees the full and prompt payment and performance by Borrower of all of Borrower's Indebtedness and obligations whether now existing or hereafter arising from time to time.

Thus, under the ICAA, the court finds the guaranty agreements to be part of the "credit agreement" between the parties in the instant case.

Having reached that conclusion, plaintiff urges the court to conclude that §§2 and 3 of the ICAA bar defendants' first affirmative defense due to the fact that the allegations therein rely on an alleged oral agreement between the parties that supposedly modified the existing credit agreement. Section 2 of the ICAA provides:

> A debtor may not maintain an action on or in any way relating to a credit agreement unless the credit agreement is in writing, expresses an agreement or commitment to lend money or extend credit or delay or forbear repayment of money, sets forth the relevant terms and conditions, and is signed by the creditor and the debtor.

Section 3 of the ICAA further bars any "claim, counterclaim, or defense by a debtor that a

7

new credit agreement is created unless the agreement satisfies the Section 2." Based on all of the above, plaintiff argues that defendants cannot rely on the alleged oral agreement that they had with plaintiff.

Defendants assert two alternative theories in response to plaintiff's arguments. First, defendants point to the "Trust Agreement and Assignment for the Benefit of Creditors" that Borrower signed designating High Ridge Partners, Inc. as its Trustee-Assignee, as the written agreement to which plaintiff agreed. According to defendants, that agreement "changed the security position of the guarantors based on the agreement [with plaintiff] that they would be released [under the guaranty agreements]." Unfortunately for defendants, however, while the trust and assignment agreement is written, it was not executed by an authorized officer of plaintiff, and therefore under §§2 and 10 of the guaranty agreements it cannot terminate or modify the guarantees made therein. Likewise, because the trust and assignment agreement is not signed by the creditor (in this case plaintiff), as well as the debtors, §§2 and 3 of the ICAA bar defendants from asserting a defense based on its content. Thus, defendants cannot use the terms of the trust and assignment agreement as a basis for an affirmative defense against plaintiff's claims.

Defendants alternatively assert that even if their agreement with plaintiff was oral, their performance of their end of that bargain (assigning Borrower's assets to a receiver of plaintiff's choosing) trumps plaintiff's claims that the agreements had to be in writing. According to defendants, "it is axiomatic that an offer can be accepted by the performance of a desired act" and "here the desired act was relinquishing all rights to the accounts receivable and the equipment which the facts will show [was] sold way under the fair market value." Although

8

performance can protect some oral agreements from operation of a statute of frauds, Illinois courts have made it clear that oral agreements falling within the ICAA are not subject to that exception.

As explained in Whirlpool Fin. Corp. v. Sevaux, 96 F.3d 216, 226 (7thCir. 1996), "Illinois courts have considered--and rejected–[the] assertion that the Illinois legislature did not intend to foreclose the traditional common law exceptions to the Statute of Frauds." Rather, the Whirlpool court explained, "Illinois courts have given effect to the broad language of the [ICAA]; the traditional exceptions to the Illinois Frauds Act--including part performance, estoppel, and claims sounding in tort--may not be raised to counter an action that falls within the scope of the [ICAA]." Id. Thus, it is clear that defendants' performance of their end of the alleged oral agreement that they made with plaintiff cannot protect them from the operation of §§2 and 3 of the ICAA. As explained in Whirlpool:

> "Illinois courts have interpreted [§2 of the ICAA] to proscribe all actions which depend for their existence upon an oral credit agreement. Indeed, there is no limitation as to the type of actions by a debtor which are barred by the Act, so long as the action is in any way related to a credit agreement. Under this interpretation, all claims on or in any way related to an oral credit agreement-- whether sounding in contract or in tort--are barred by the Act.

96 F.3d at 225. Thus, defendants cannot rely on oral agreement that they claim they entered into with plaintiff.

**B. Defendants' "Estoppel" Affirmative Defense**

Defendants' second affirmative defense is presented in two parts. First defendants allege that Borrower's default referenced in plaintiff's May 4, 2001, letter "was caused by the conduct of Plaintiff." According to defendants, "The alleged default related to an alleged over-advance

9

that was expressly authorized and agreed to by Plaintiff." In part two of this defense, defendants argue that, "As set forth in the First Affirmative Defense, Plaintiff should be estopped from enforcing the guarantees referenced in the Complaint because it offered to release Defendants from all guarantees if they agreed to assign the assets of [Borrower] to a receiver of Plaintiff's choosing."

As with defendants' first affirmative defense, plaintiff thoroughly addresses defendants' equitable estoppel arguments. With respect to defendants' claim that they are not liable for Borrower's default because plaintiff caused it by giving Borrower an over-advance, plaintiff points out that such advances were contemplated by the loan agreement, which contained a clause in §2.2, stating: "All Revolving Advances made hereunder shall be added to and deemed part of the Obligations when made." Further, plaintiff urges, the forbearance agreement obligated the repayment of any over-advance by designating the failure to do so as an "Event of Default." Plaintiff also argues that defendants are liable for the over-advance because the Borrower's indebtedness is defined in the guaranty agreements as "any and all advances, debts, obligations and liabilities of Borrower . . . heretofore, now or hereafter made," and also because §5 of the guaranty agreements provides that those agreements "shall not be affected or impaired" by any of the following:

> modifications, supplements, extensions or amendments of any contract or agreement to which the parties thereto may hereafter agree, nor by any modifications, releases or other alterations of any of the Indebtedness hereby guarantied or of any security therefore, nor by any agreements or arrangements whatever with Borrower or anyone else.

Finally, plaintiff argues, defendants are liable for the over-advance because the letter agreements that they signed in March 2001, state: "The undersigned further reaffirms, acknowledges and consents to the continuation of [his/its] obligations under the Guaranty, notwithstanding any loans or advances made to the Borrower under the Loan Agreement or

10

Forbearance Agreement."

Defendants respond to plaintiff's arguments by claiming that:

> Under Illinois law, one of the elements of equitable estoppel is detrimental reliance. If plaintiff had not lulled defendants into taking the over[-]advance, the alleged default on the Forbearance Agreement would not have occurred. The factual basis of estoppel must be determined by the trier of fact. This should not be ruled on as a matter of law. Defendants' reliance on plaintiff's conduct that plaintiff would not purposely create a default was reasonable. Equitable estoppel may arise even though there was no intention on the part of the party estopped to relinquish any existing right. Defendants have a right to set forth their evidentiary facts to show that the actions of the plaintiff created equitable estoppel. Under the facts as taken as true, the trier of facts should determine whether or not as to the guarantors a waiver by estoppel has been established.

The court finds defendants' arguments lacking, not only because they fail to address plaintiff's arguments based on the text of the agreements signed by the parties, but also because they fail to address all of the elements of equitable estoppel. To allege equitable estoppel under Illinois law, defendants must aver that: (1) plaintiff misrepresented or concealed material facts; (2) plaintiff knew at the time that it made its representations that the representations were untrue; (3) defendants did not know that the representations were untrue when they were made and acted upon; (4) plaintiff intended or reasonably expected the representations to be acted upon by defendants or by the public generally; (5) defendants reasonably relied upon the representations in good faith and to their detriment; and (6) defendants have been prejudiced by their reliance on the representations. Parks v. Kownacki, 737 N.E.2d 287, 296 (Ill. 2000) (citing Vaughn v. Speaker, 533 N.E.2d 885 (Ill. 1988)).

Rather than aver all of the above, defendants have essentially alleged that because plaintiff caused Borrower's default, defendants should not have to pay, and they also should not

11

have to pay because plaintiff did not follow through on its oral promise to forgive defendants' debt if Borrower signed a trust and assignment agreement. The former argument fails because it does not set forth or even suggest the elements of a claim for equitable estoppel, as explained above. The latter argument relies on defendants' claim that plaintiff breached its alleged oral agreement with them and therefore fails for the same reasons that defendants' first affirmative defense was stricken. Thus, the court grants plaintiff's motion to strike defendants' equitable estoppel affirmative defense.

### C. Defendants' "Breach of the Covenant of Good Faith and Fair Dealing" Affirmative Defense

Defendants' third affirmative defense alleges that plaintiff breached the covenant of good faith and fair dealing "when it created purported events of default through its own conduct, and then sought to declare a default and obtain concessions from Defendants and the Borrower in order to forestall or avoid the effects of its own wrongful conduct. "

To this argument, plaintiff responds: "Defendants mischaracterize the nature of the defaults in a vain attempt to avoid their contractual liability." Instead, plaintiff asserts, the default resulted from Borrower's failure to pay back money plaintiff was authorized to and did loan under the terms of the loan and forbearance agreements. Further, plaintiff argues, its attempt to collect the amount due from defendants was proper given the terms of the guaranty agreements. Thus, plaintiff concludes, "the covenant of good faith and fair dealing cannot be used to frustrate [plaintiff's] rights to enforce the terms of these agreements."

Defendants are correct that the agreements signed by the parties in the instant case all include an implied covenant of good faith and fair dealing. See Northern Trust Co. v. VIII S.

Mich. Assocs., 657 N.E.2d 1095, 1104 (Ill. App. Ct. 1st Dist. 1995). This covenant comes into play when the terms of the agreement are susceptible to two conflicting constructions and it is necessary to determine the intent of the parties. Id. "Problems involving the obligation of good faith and fair dealing generally arise where one party to a contract is given broad discretion in performance." Id. (citing Resolution Trust Corp. v. Holtzman, 618 N.E.2d 418, 424 (Ill. App. Ct. 1st Dist. 1993). Such discretion must be exercised "reasonably, not arbitrarily, capriciously, or in a manner inconsistent with the reasonable expectation of the parties." Northern Trust Co., 657 N.E.2d at 1104 (citing Continental Mobile Tel. Co. v. Chicago S M S A Ltd. Partnership, 587 N.E.2d 1169 (Ill. App. Ct. 1st Dist. 1992)). Likewise, where such discretion is unfettered, it may not be exercised in bad faith. See Chemical Bank, 614 N.E.2d at 441.

The problem with defendants' reliance on the covenant of good faith and fair dealing, however, is that they do not allege facts that support their assertion that plaintiff used its discretion improperly under Illinois law. Defendants assert in their response brief that it was plaintiff's act of "proposing the Forbearance Agreement and the assignment of assets," that violated the covenant of good faith and fair dealing. This argument is without merit, however, because proposing an agreement, without more, cannot be said to be unreasonable, arbitrary, or capricious. Similarly, plaintiff's proposals did not appear to result from some unfettered discretion allocated to plaintiff via the agreements and, even if they did, it remains unclear how making a proposal alone can be found to be a bad faith exercise of one's discretion. Further, if defendants' allegations refer back to the complaint raised in their second affirmative defense—that plaintiff caused Borrower to default by extending the over-advance—again defendants fail to explain how such an action can be found to be unreasonable, arbitrary,

capricious, or, assuming it was made within plaintiff's unfettered discretion, in bad faith. And, finally, if the action by plaintiff about which defendants complain involved an attempt to enforce of the terms of the guaranty or letter agreements, then defendants' argument is also likely to fail. "Parties to a contract . . . are entitled to enforce the terms of the contract to the letter and an implied covenant of good faith cannot overrule or modify the express terms of a contract." Northern Trust Co., 657 N.E.2d at 1104 (citing Resolution Trust, 618 N.E.2d at 424).

For these reasons, the court grants plaintiff's motion to strike defendants' third affirmative defense.

## CONCLUSION

The court concludes that, regardless of whether defendants waived the right to raise affirmative defenses via the agreements they entered into with plaintiff, defendants' affirmative defenses do not stand up to scrutiny under Rule 12(b)(6) of the Federal Rules of Civil Procedure. Accordingly, all three affirmative defenses are hereby stricken. This matter is set for a report on status March 6, 2002, at 9:00 a.m.

**ENTER:** **February 21, 2002**

_____
**Robert W. Gettleman**
**United States District Judge**